[No. 46. Decided May 31, 1890.]

BENJAMIN BLANTON v. THE STATE OF WASHINGTON.

MURDER — INDICTMENT — EVIDENCE — RES GESTÆ — GRAND JURY — VENIRE.

Under Code Wash. T.; making murder a purely statutory crime, an indictment for murder which alleges that the defendant did, purposely and of his deliberate and premeditated malice, assault the deceased, and that the defendant, of his premeditated malice, fired the shot which killed the deceased, but does not allege that the defendant, purposely and of his deliberate and premeditated malice, killed the deceased, is fatally defective as charging murder in either the first or second degree; nor is the indictment aided by the concluding part, that the said defendant " so in the manner and by means aforesaid, feloniously, purposely and of his deliberate and premeditated malice, did kill and murder " the deceased. An objection as to the sufficiency of such an indictment may be made for the first time in the supreme court. (HOYT, J., dissents.)

Such an indictment, though insufficient to sustain a conviction of murder in the first or second degree, does sufficiently charge the crime of manslaughter, and is, therefore, valid to that extent.

Where the crime, for which the defendant was in custody, was committed shortly after the discharge of the regularly empanneled grand jury of the county, it is competent for the court, then in session, to re-summon the grand jury to inquire into the matter; and the defendant being present when the grand jury was empanneled, and given an opportunity to challenge either the entire panel, or the individual jurors, and declines so to do, he cannot afterwards question the legality of the empanneling of the grand jury by a motion to quash the indictment.

In a prosecution for murder it is not error for the court to allow a witness to testify that, at the time of the commission of the homicide, the deceased and two other persons were walking together on the sidewalk, and that, as they were passing the defendant, he sud-

denly drew a revolver from his pocket and shot the deceased, and almost immediately turned and fired at the two persons with him, such evidence being admissible as part of the *res gestœ.*

It is a mere irregularity, not at all prejudicial to the rights of the defendant, for the court to order a venire for additional jurors before the regular panel was exhausted, especially where the record shows that none of the additional jurors or talesmen were drawn as trial jurors until the original panel was entirely exhausted.

*Appeal from Superior Court, Whitman County.*

Indictment for murder against Benjamin Blanton. The facts sufficiently appear in the opinion.

*Moses Bull,* and *C. M. Kincaid,* for appellant.

*L. H. Plattor,* Prosecuting Attorney, and *W. C. Jones,* Attorney General, for The State.

The opinion of the court was delivered by

ANDERS, C. J.—On the 16th day of December, 1889, the appellant, Benjamin Blanton, killed one Thomas C. Click, in Whitman county, in this state, by shooting him with a pistol. Upon the plea of not guilty, and the defense of insanity, or *delirium tremens,* resulting from long continued use of intoxicating liquors, he was tried, convicted of murder in the first degree, and sentenced to be hanged. The defendant brings the cause to this court for review, and claims a reversal of the judgment of the court below for errors alleged to have been committed on the trial.

Although the indictment was not attacked in the trial court, either by motion to quash or by demurrer, or even by motion in arrest of judgment, it was insisted on the argument in this court, by appellant's counsel, that it does not state facts sufficient to constitute murder either in the first or second degree, under our statute, and is insufficient to sustain the judgment of the superior court. And while it is to be regretted that the question was not raised at an earlier stage of the proceedings, and presented in the brief of counsel, still we are of the opinion that it is a matter

which the defendant should not be deemed to have waived by his failure to urge it in the court below. The indictment, omitting the venue, is as follows:

"Benjamin Blanton is accused by the grand jury of the State of Washington, for the county of Whitman, by this indictment, of the crime of murder in the first degree, committed as follows: That he, the said Benjamin Blanton, on the 16th day of December, 1889, at the county of Whitman, in the State of Washington, in and upon the body of one Thomas C. Click, then and there being, feloniously, purposely, and of his deliberate and premeditated malice, did make an assault, and that he, the said Benjamin Blanton, with a certain revolving pistol, then and there charged with gunpowder and leaden bullets, which said revolving pistol he, the said Benjamin Blanton, then and there had and held, and then and there feloniously, purposely, and of his deliberate and premeditated malice, did discharge and shoot off, to, at, against and upon, the said Thomas C. Click, and that the said Benjamin Blanton, with one of the leaden bullets aforesaid, out of the revolving pistol aforesaid, then and there by force of the gunpowder aforesaid, by the said Benjamin Blanton discharged and shot off as aforesaid, then and there feloniously, purposely, and of his deliberate and premeditated malice, did strike, penetrate and wound him, the said Thomas C. Click, in and upon the body of him, the said Thomas C. Click, giving to him, the said Thomas C. Click, one mortal wound, of which said mortal wound he, the said Thomas C. Click, then and there instantly did die; and so the grand jury aforesaid do say that the said Benjamin Blanton, him, the said Thomas C. Click, in the manner and by the means aforesaid, feloniously, purposely and of his deliberate and premeditated malice, did kill and murder, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Washington. Dated at Colfax, in said county of Whitman, the 19th day of December, A. D. 1889."

At common law murder was defined as the unlawful killing of a human being under the king's peace, with malice prepense or aforethought, either express or implied by law. Russ. Crimes, 482; 4 Black. Com. 198. And there was no classification of crime into degrees, but all malicious

homicides were of the same grade and subject to the same penalty. It being manifestly unjust to punish him who kills another with only that degree of malice which is implied by law, with the same severity as him who deliberately and premeditatedly takes the life of a fellow-being, the legislature of several of our states have changed the common law relating to murder, not only by dividing it into distinct degrees, but by specifically defining its grades and prescribing corresponding penalties. Our statute defines murder in the first degree as follows: " Every person who shall purposely, and of deliberate and premeditated malice, or in the perpetration or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill another, every such person shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death. Code Wash. T., § 786. And " every person who shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree." Code, § 790. Murder, therefore, with us, is now a purely statutory, and not a common-law, crime, and must be so considered by the courts. And in order to constitute murder in either degree, it is necessary that there must have been a specific intent or purpose to kill. Under our statute this is evident. But the difficulty, in given cases, is to determine whether or not this intent has been sufficiently expressed in the indictment.

And the question now before us is, has this been done in the indictment now under consideration? It is insisted that the indictment nowhere charges that the defendant purposely and of his deliberate and premeditated malice killed the deceased, and that without such a direct and positive allegation, it is fatally defective. The objection is well taken, and must be sustained. The indictment does allege that the defendant did, purposely and of his deliberate and pre-

meditated malice, assault the deceased, and that he, purposely and of his deliberate and premeditated malice, fired the fatal shot; but it does not allege that it was thus fired with the intent to kill, or that the killing was thus done. All of the averments of this indictment may be true and yet the defendant may not be guilty of murder.

But it has been suggested that the concluding part of the indictment, beginning with the words "and so," does contain all the averments necessary to make it conform to the requirements of the statute. But is this a concise statement of a fact descriptive of the crime, or is it a mere conclusion of law drawn from antecedent averments of facts? The adverb "so" is defined by Webster as meaning "in the same manner; as has been stated; in this or that condition or state; under these circumstances; in this way; with reflex reference to something just asserted." This is the ordinary way the word is understood, and it must be taken to mean the same thing when used in an indictment.

Under our statute an indictment must be direct and certain as to the party charged, the crime charged, and the circumstances of the crime, when necessary to constitute a complete crime, and the act or omission charged as the crime must be clearly and distinctly stated in plain and concise language, so that a person of ordinary understanding may know what is intended; and conclusions of law need not be stated. At common law the indictment would be good, as it was not necessary to allege a purpose or design to kill in an indictment for murder; and the concluding part was deemed only a conclusion of law without which an indictment, as such, would be sufficient. *Rex v. Nicholas*, 32 Eng. C. L. 620; *Fouts v. State*, 8 Ohio St. 98, and authorities cited.

If this were a new question, and presented for the first time; if pleaders and courts were not familiar with the form in which this indictment is drawn, and accustomed to look upon it as the established and long-sanctioned prece-

dent of an indictment, would we hesitate to say that it does not consist with the essential requirements of our statutes? We think not. And as we have no common-law crime of murder in this state, we are constrained to look solely to our statute for the definition of the crime. And it will not do for the grand jury to charge an assault or a shooting in the language of the statute, and then conclude that " so" the deceased was killed. The following cases are in point. See *Fouts v. State,* 8 Ohio St. 98; *Kain v. State,* 8 Ohio St. 306; *State v. McCormick,* 27 Iowa, 402; *Schaffer v. State,* 22 Neb. 557; 3 Am. St. Rep. 274; *Leonard v. Territory,* 2 Wash. T. 381.

In the case of *Leonard v. Territory, supra,* the indictment was identical in its language with the one now before us. And our late territorial supreme court held it insufficient to charge murder in the first degree, for the reason that it failed to allege that the killing therein described was done purposely and of deliberate and premeditated malice. And the majority of the court are satisfied both with the reasoning and the conclusion reached in the opinion of the learned judge in that case. But while we are constrained to hold that the indictment in this case is insufficient to sustain a conviction of murder in either the first or second degree, we are clearly of the opinion that it sufficiently charges manslaughter, and is therefore valid to that extent.

Turning from the indictment, we will now direct our attention to the errors alleged to have been committed on the trial of the cause in the court below.

The first assignment is, that the court erred in overruling defendant's motion to set aside the indictment, for the alleged reason that the grand jury which found the indictment was ordered, summoned, empanneled and sworn without authority of law. A grand jury had been summoned for the regular term of the district court of the territory, and has been discharged by the court on the 6th day of

the session. Afterwards the defendant, while the court was in session and without a grand jury, committed the crime with which he is charged. The court ordered the grand jury to be re-summoned to inquire into the matter. The defendant was then in the custody of an officer, upon complaint duly made, was present when the grand jury was empanneled, and though given an opportunity to challenge either the entire panel or the individual jurors, declined so to do, but afterwards interposed a motion to set aside the indictment for the reasons above stated. The court very properly overruled the motion. After waiving his right to object to the jury the defendant had no right to raise the objection by motion to quash the indictment. Besides, the statute provides that no motion to set aside the indictment on the ground specified shall be allowed to a defendant held to answer before indictment. Code Wash. T., § 1047. The defendant was in substantially the position contemplated by that section of the code, and he cannot be heard to urge any objections to the grand jury.

It is next urged that the court erred in ordering a venire for thirty-six additional trial jurors before the regular panel of twenty-three jurors was exhausted. But the record shows that none of the additional jurors or talesmen were drawn as trial jurors until the original panel was entirely exhausted. This at most was but an irregularity, and we fail to see any error therein that could have been prejudicial to the defendant.

On the third day of the trial defendant moved for a continuance on the ground of newly discovered evidence. The motion was overruled and exception taken and error assigned. The affidavit was insufficient, and we cannot say the court abused its discretion in denying the motion.

Objection is also made to the refusal of the court to exclude from the jury the evidence of one Mattock as to the shooting of Bennett and Doble, on the ground of irrelevancy. The facts disclosed by the record are these: At the time of

the commission of the homicide, Click the deceased, and Bennett and Doble, were walking together on the sidewalk, in Colfax.  As they were passing by the defendant, he suddenly drew a revolver from his pocket and shot Click, and almost immediately turned and fired at the other two persons, Bennett and Doble.  Mattock testified to these facts, and his evidence was objected to as irrelevant, and as tending to show the commission, by defendant, of other distinct crimes.  The testimony was properly admitted.  It was a part of what the defendant did at the time — a part of his acts.  All the *res gestae* may be shown, though the transaction is a continuing one.  1 Bish. Crim. Proc. (3d ed.), § 1125.

During the trial one John Tobin was called as a witness for defendant.  After stating to the court and jury how the defendant acted and talked, especially on the day of the homicide, he was asked by defendant's counsel to "state whether or not he talked like a sane or an insane man during the night."  The question was objected to by the prosecution, and the objection sustained, and the ruling of the court duly excepted to and assigned for error.  The question might have been permitted without prejudice to the state; and, on the other hand, we fail to perceive wherein the defendant could have been, in any degree, injured or prejudiced by its exclusion.  It is true that expert witnesses may give their opinions as to the insanity of an individual, after having first testified as to his actions, declarations, general demeanor and peculiarities; but we fail to see that this rule was violated in this particular instance.

It is further claimed that the court unduly abridged the right of the defendant to testify in his own behalf, but we think the objection is not well taken.

The defendant also assigns several errors which he alleges were committed by the court in charging the jury, as well as in refusing to charge as requested by his counsel.  We have carefully examined the instructions and have come to

the conclusion that the law, as applicable to the facts of the case, was fully and fairly given to the jury, and that the defendant could not have been prejudiced by the refusal of the court to instruct as requested..

Holding, as we do, that the indictment sufficiently charges manslaughter, the cause must be remanded to the court below, with instructions to set aside the judgment heretofore entered, and to pass sentence upon the defendant for manslaughter, upon the verdict of guilty, and it is so ordered.

SCOTT and STILES, JJ., concur.

DUNBAR, J., not sitting.

HOYT, J. (*dissenting*). — I concede that the weight of authority is with the majority of the court; but I cannot bring my judgment to a concurrence therewith, and hence I am compelled to dissent.

The reasoning of the cases relied upon to sustain the position of the majority as to the sufficiency of the indictment seems to me to be overtechnical and unsatisfactory to the common understanding. I agree with the majority that the specific intent to kill must appear, but, unlike them, I am of the opinion that it does appear in the indictment in question. I think that the reasoning of the minority of the court in the two Ohio cases, cited by Chief Justice ANDERS, is more satisfactory than that of the majority, and should be inclined to follow the same and hold this indictment good without the aid of our statute as to the sufficiency of indictments. And, when aided by such statute, it seems to me clear that the position taken by the majority of the court is untenable.

It is true that one section of our statute requires that the allegations of the indictment must be direct and certain; but this section must be interpreted in the light of the subsequent sections, which provide in substance that an indictment shall be sufficient if a man of common understanding

18—1 WASH.

can·determine therefrom with what he is charged.   Interpreting these sections together, and I can give them all force only by holding that the legislature meant to state in said first section what a perfect indictment should contain, and how it should be stated; and that the subsequent sections were enacted for the purpose of preventing a person charged with crime from availing himself of a want of a technical compliance with said first section by the prosecution.   In other words, the legislature has said every indictment ought to be direct and positive as to all its allegations, but if it is not, the defendant can take no advantage of such fact, provided certain things can be gathered therefrom by a man of common understanding.

If this construction of these sections of the statute is correct, the material inquiry in this case is this : Can a man of common understanding see from the indictment in question what crime is intended to be charged, together with certain other necessary allegations as to which no question is made? In my opinion there can be but one answer to this question, and that an affirmative one.   Let any man of common understanding read the said indictment, and he cannot possibly fail to see that the prosecution intended to charge the defendant with murder in the first degree.   And, if this is so, I think that under our statute the indictment is good as against the objections urged against it.

Not only do I think the indictment good, but even if it were bad, I do not think the defendant was in a position to avail himself of its insufficiency as a cause for reversal by this court.   For while it is doubtless true that the objection, that the indictment does not state facts constituting the crime of which the defendant was convicted, can be raised for the first time in this court, yet in my opinion, it must be regularly raised by the assignment of errors in the case, or at least by the briefs of one or both of the parties to the appeal.   In this case the sufficiency of the indictment is not attacked in the least degree, either in the assignment of errors or in the

briefs, and was first suggested by the oral argument on the part of the plaintiff in error.    To hold that such a question can thus be raised and made available by a defendant is to practically nullify the requirement of an assignment of errors, either in the brief or elsewhere, and throw open the doors to such a course of practice as will practically deprive this court of the benefit of an argument by the defendant in error as to the vital question upon which the case may turn in this court, and also in many cases as to the final determination of the cause.

I think that the judgment and sentence of the court below should be affirmed: First, because the indictment is sufficient; and second, because the error upon which the majority of the court founds the reversal was not properly before the court for determination.