[No. 4772.   Decided December 5, 1903.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES CHAMPOUX, *Appellant*.[1]

HOMICIDE—MURDER IN THE FIRST DEGREE—INFORMATION—ALLEGING INTENT TO KILL—SUFFICIENCY. An informaiton charging that the accused purposely and of his deliberate and premeditated malice, struck, cut, and mortally wounded the said B, from which said mortal wound said B died, sufficiently alleges an intent to kill, and supports a conviction of murder in the first degree; the intent to "mortally wound" importing *ex vi termini* an intent to kill.

SAME—ALLEGING DEATH FROM WOUNDS—TIME OF DEATH—SHOWN BY DATE OF FILING INFORMATION. An information for murder charging that the deceased then and there languished, and langishing, died, sufficiently shows that deceased died within a year and a day from the infliction of the wounds mentioned; and if not, the defect is cured by the fact that the information was filed three days after the crime was committed.

DEFENSE OF INSANITY—SPECIAL VERDICT OF SANITY—EVIDENCE—COMPETENCY. In a prosecution for murder where the sanity of the accused is made an issue by him, and an inquest held at his request before a special jury, during which the main trial is suspended, a verdict of sanity by such special jury and the record in such proceeding is properly admitted as competent, although not conclusive, evidence as to his sanity.

SAME—INSTRUCTIONS. In such case it is proper to refuse an instruction that such a verdict shall not have any bearing upon

[1]Reported in 74 Pac. 557.

the sanity of the accused at the time of the commission of the offense.

CRIMINAL LAW—TRIAL—TAKING EXHIBITS TO THE JURY ROOM. Under Bal Code, § 5004, the records in an inquiry as to the accused's sanity, which has been received in evidence, may be taken to the jury room upon the jury's retiring for deliberation.

VENUE—MOTION FOR CHANGE—HEARING—ORAL TESTIMONY—DISCRETION. Upon a motion for a change of venue it is discretionary with the trial court to call witnesses to testify and it can not be said that refusal to do so is an abuse of discretion.

APPEAL—REVIEW—OBJECTIONS TO TESTIMONY. Error cannot be predicated upon rulings as to the evidence where the record shows that no objections were made below.

CRIMINAL LAW—WITNESSES—CREDIBILITY—FORMER CONVICTION OF FELONY. It is proper to ask a witness upon cross-examination whether he has ever been convicted of a felony, Bal. Code, § 5992, providing that such conviction may be shown to affect his credibility.

VENUE—CHANGE ON ACCOUNT OF PUBLIC SENTIMENT—SUFFICIENCY OF SHOWING. A motion for a change of venue because of the inflamed condition of the public mind, on account of many sensational crimes in a certain county, is properly denied when the general showing, if effective, would preclude the trial of all criminal cases in such county, and exhibited only the feeling ordinarily prevalent in a community where a heinous crime has been committed.

EVIDENCE—HEARSAY. The exclusion of immaterial and hearsay evidence is not error.

CRIMINAL LAW—TRIAL—REQUEST FOR WRITTEN INSTRUCTIONS. A request to instruct the jury in writing is complied with by reading from separate papers portions of instructions requested and marking the rejected portions with a lead pencil.

COURTS—JURISDICTION—REMOVAL OF CAUSES. A foreign subject accused of murder in the first degree committed within state jurisdiction is not entitled to a removal of the prosecution to the United States court.

EVIDENCE—LOST WRITING. Secondary evidence of the contents of written instruments is admissible when the instruments are lost.

JURORS—CHALLENGE FOR CAUSE—HOW WAIVED. Error in not sustaining challenges to jurors for cause is without prejudice

when they were afterwards removed by peremptory challenges, or when the defendant proceeded to trial without removing such a juror or exhausting his peremptory challenges.

CONTINUANCE. The discretion of the trial court in refusing a continuance on account of the absence of witnesses not interfered with.

WITNESSES IN REBUTTAL—ENDORSEMENT OF NAMES ON INFORMATION. It is not error to allow witnesses to testify in rebuttal without endorsement of their names on the information.

Appeal from a judgment of the superior court for King county, Bell, J., entered June 6, 1903, after a trial and conviction of the crime of murder in the first degree. Affirmed.

*A. J. Speckert,* for appellant, contended, *inter alia:* The information is fatally defective in failing to allege a purpose to kill. *People v. Jacinto Aro,* 6 Cal. 208; *Leonard v. Territory,* 2 Wash. Ter. 381, 7 Pac. 872; *Blanton v. State,* 1 Wash. 265, 24 Pac. 439; *State v. So Ho Ge,* 1 Wash. 275, 24 Pac. 442; *State v. So Ho Me,* 1 Wash. 276, 24 Pac. 443; *Watson v. State,* 2 Wash. 504, 27 Pac. 226; *State v. Day,* 4 Wash. 104, 29 Pac. 984; *State v. Freidrich,* 4 Wash. 204, 29 Pac. 1055, 30 Pac. 328, 31 Pac. 332; *State v. Gile,* 8 Wash. 12, 35 Pac. 417; *State v. Smith,* 9 Wash. 341, 37 Pac. 491; *State v. Cronin,* 20 Wash. 512, 56 Pac. 26; *State v. Crawford,* 39 Kan. 257, 18 Pac. 184; *State v. McCormick,* 27 Iowa 402; *State v. Watkins,* 27 Iowa 415; *State v. Boyle,* 28 Iowa 522; *Shaffer v. State,* 22 Neb. 557, 35 N. W. 384, 3 Am. St. 274; *Kaelin v. Commonwealth,* 84 Ky. 354, 1 S. W. 594; *Fouts v. State,* 8 Ohio St. 98; *Kain v. State,* id. 306; *Hagan v. State,* 10 id. 459; *Bower v. State,* 5 Mo. 364, 32 Am. Dec. 325; *State v. Jones,* 20 Mo. 58; *Jewell v. Territory,* 4 Okl. 53, 43 Pac. 1075. The record of the insanity trial was not competent on the subsequent trial of the main charge. *Freeman v. People,* 4 Denio 9; *French v.*

*State,* 93 Wis. 325, 67 N. W. 706, 10 Am. Cr. Rep. 616; *Corbley v. Wilson,* 71 Ill. 211; *State v. Hopkins,* 13 Wash. 5, 42 Pac. 627. It was error to deny the application for a change of venue. *State v. Spotted Hawk,* 22 Mont. 33, 55 Pac. 1026; *State v. Olds,* 19 Ore. 397, 24 Pac. 394; *Carcia v. State,* 17 Crim. Law Mag. 17. The defendant being a foreign subject was entitled to a removal of the case to the United States court, under U. S. R. S., §§ 641 and 1977. *Strander v. West Virginia,* 100 U. S. 664; *Tennessee v. Davis,* 100 U. S. 648.

*W. T. Scott, Elmer E. Todd,* and *Hermon W. Craven,* for respondent, contended, among other things, that the information was sufficient. *Loeffner v. State,* 10 Ohio St. 598; *Territory v. Godas,* 8 Mont. 347, 21 Pac. 26. The intent to inflict a mortal wound is an intent to kill. *State v. Schaffer,* 22 Neb. 557, 35 N. W. 384; *People v. Davis,* 73 Cal. 355, 15 Pac. 8; *State v. Arnewine,* 126 Mo. 567, 29 S. W. 602; *Price v. State,* 35 Ohio St. 601; *State v. Smith,* 38 Kan. 194, 16 Pac. 254; *State v. Townsend,* 66 Iowa 741, 24 N. W. 535. The record in the insanity case was competent. *Wheeler v. Slate,* 34 Ohio 394; *People v. Farrell,* 31 Cal. 576; *State v. Reed,* 41 La. An. 581, 7 South. 132; 2 Phillips, Evidence, § 266; Greenleaf, Evidence (16th ed.), § 556.

DUNBAR, J.—Appellant was found guilty of murder in the first degree by the superior court of King county, and judgment was pronounced in accordance with the verdict. The charging part of the information on which the appellant was convicted is as follows:

"He, the said James Champoux, in King County, State of Washington, on the 5th day of November, 1902, unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, an assault did make in and upon the

person of Lottie Brace with a deadly weapon, towit: a knife then and there had and held in the hand of the said James Champoux, and with which he then and there unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, struck, cut and mortally wounded the said Lottie Brace from which said mortal wounding the said Lottie Brace then and there languished and languishing died."

It is sturdily contended, that this information will not sustain a conviction for murder in the first or second degree, or for any greater degree of crime than manslaughter, for the alleged reason that it fails to state an intention to kill; that, unless the intention exists and the killing actually takes place, there is no murder in either the first or second degree under our statute; and that it only charges the accused with an intention to commit an assault. *Leonard v. Territory,* 2 Wash. T. 381, 7 Pac. 872, and *Blanton v. State,* 1 Wash. 265, 24 Pac. 439, are relied upon in support of such contention. But whatever may be said of the merits of those decisions, both of which were rendered by a bare majority of the respective courts deciding them, it is not necessary in this case to either overrule or reaffirm the doctrine there announced, for the reason that the cases are plainly distinguishable, especially if this court should indulge in the nice distinctions made in those cases which resulted in the conclusion that intent to kill was not charged.

In the indictment in the Leonard case there was a great deal of involved verbiage, and the learned chief justice who wrote the opinion, after a somewhat technical analysis of the language used in the indictment, reached the conclusion that no intent to murder was charged in the main or charging part of the indictment, and that the concluding expression, "and so the jurors aforesaid do say . . . in

manner and form aforesaid, said Andrew Leonard, the said Ambrose Patton feloniously, purposely, and of his deliberate and premeditated malice, by means of said gun and the shooting aforesaid, did kill and murder aforesaid," etc., was not the charging of any fact, but was only the statement of an inference from the facts previously stated. In *Blanton v. State, supra,* the indictment was substantially the same as in *Leonard v. Territory,* and in both cases *Fouts v. State,* 8 Ohio St. 98, was cited by the court and relied upon in support of the decisions holding the indictment insufficient in the particulars mentioned. But that case, as we shall hereafter see, is not authority for holding the information in this case insufficient to sustain the judgment for murder.

We think, if the searching analysis employed by the court in the Leonard case had been brought to bear on an information like the one at bar, the court would have had no difficulty in discovering a charge of intent to murder. Certainly, an indictment charging that A unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, mortally wounded B (with the other necessary averments as to time, place, and manner), charges an intent to murder; for it would be doing violence to the ordinary construction of language, and to common sense, to announce that one man could intend to mortally wound another without intending to kill him; and, if he intended to kill him unlawfully, feloniously, and with premeditated malice, it is evident that he intended to murder him. An analysis of this information shows that that is, in effect, what is charged; for, treating all the words between the word "malice" in the fourth line of the information and the word "struck" in the ninth line of the information as descriptive, we have the substance of the charge as follows:

"He purposely and of his deliberate and premeditated malice struck, cut, and mortally wounded the said Lottie Brace, from which said mortal wound said Lottie Brace then and there languished, and languishing died." Or even commencing with the word "he" in the center of the seventh line of the information, the substance of the charge is as follows: "He then and there unlawfully, feloniously, and of his deliberate and premeditated malice, struck, cut, and mortally wounded the said Lottie Brace," etc. Either of these statements constitutes a good indictment so far as the question of intent to murder is concerned.

This conclusion is indorsed by the supreme court of the state of Ohio, which rendered the decision in *Fouts v. State,* *supra,* which is cited by all that line of cases holding bad such indictments as were passed upon in the Leonard and Blanton cases; for, at the same term of court in which the case of *Fouts v. State* was tried, viz., the December term, 1857, there was tried the case of *Leoffner v. State,* which was not reported until in 10 Ohio St. 598, where it was held that an averment that the accused purposely and of his deliberate and premeditated malice gave to H a mortal wound from which he instantly died, is sufficient, the intent to inflict a mortal wound importing *ex vi termini* an intent to kill. No mention was there made of the *Fouts* case, the court evidently concluding that the distinction between the two indictments was evident. So in this case, the intent to mortally wound being charged imports *ex vi termini* an intent to kill. See also *Territory v. Godas,* 8 Mont. 347, 21 Pac. 26, where an indictment identical with the one under consideration, so far as the question of intent is concerned, was held to charge an intent to kill.

The statute, it is true, provides that the indictment must be direct and certain as regards the party charged, the

crime charged, and the particular circumstances of the crime charged, when they are necessary to constitute a complete crime. But what is the reason for these cautionary provisions of the statute? The statute itself answers the query, viz., so that a person of common understanding may know what is intended; and the provisions just above quoted should be construed in reference to, and in connection with, subd. 6 of § 6850 [Bal. Code], which provides that the indictment is sufficient if the act or omission charged as a crime is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. All of the requirements summed up are for the purpose, and only for the purpose, of insuring to the accused the benefit of such provision, viz., that he shall know what is intended so that he may intelligently prepare his defense. This provision of the code is the all-important consideration, and all the other provisions enumerated are simply for the purpose of securing this one. This is the test of the fairness and efficiency of the information, as one of the prescribed processes in the administration of justice; and, subjected to this test, we think the information in this case is sufficient, and that the accused was notified that he was called upon to answer to the charge of murdering Lottie Brace.

In answer to the suggestion that it does not appear from the information that the deceased Lottie Brace died within a year and a day from the infliction of the wounds mentioned, we think the expression "then and there languished, and languishing died," relates back to the time the wounds were inflicted, and that the words "then and there" qualify the word "died" as well as the word "languished." But, in any event, the phraseology criticized is not material; for

the information informs the accused that the mortal wounds from which Lottie Brace died were inflicted on the 5th day of November, 1902, and the information is dated on the 8th day of November, 1902, three days after. So that it must necessarily follow that the death occurred within three days from the infliction of the wounds. The information in all respects seems to be sufficient to sustain the judgment.

This disposes of the first, second, and sixth assignments of error. The third, fourth, and fifth relate to the action of the court in permitting the admission in testimony of the record of insanity, permitting such record to be taken into the jury room, and refusing instructions offered concerning such record. During the pendency of what may be termed the main trial, on application of appellant's attorney based upon affidavits that appellant was insane, the court ordered a special jury to try the question of insanity, the main trial being suspended pending such trial. The jury appointed to try appellant's sanity in due time returned a verdict of sanity; and the state was permitted, over the objection of appellant, to introduce the record of the insanity trial, which the appellant alleges was afterwards taken to the jury room with the jury.

The question of the appellant's insanity was a material issue in the case; a statement to that effect was made in the most emphatic terms by appellant's counsel, in his opening address to the jury; the testimony of various witnesses was offered to sustain the statement, and the inquest itself was petitioned for by appellant in that behalf. We think the testimony was properly admitted, as other testimony was admitted, bearing on the question of insanity—not as conclusive evidence, but simply as competent evidence, although some courts hold such testimony to be conclusive of insanity at the time the special verdict was rendered. Thus,

in *People v. Farrell,* 31 Cal. 576, the court held that the verdict of a jury called to try the question of the sanity of the defendant, the verdict being that he was insane, was conclusive that he was insane at the time the verdict was rendered, and was therefore admissible in evidence on his trial for the offense as tending to show that he may have been insane when the offense was committed. Of course the same reasoning would sustain the admission where the verdict was one of sanity. Under this authority, the following instruction asked by the counsel for appellant— "The court instructs you that the verdict of sanity returned by the jury is only presumptive evidence, but not conclusive, of the defendant's sanity upon the day when the said verdict was rendered, and said verdict shall not have any bearing upon the question of defendant's sanity or insanity at the time he was accused of assaulting Lottie Brace," was properly refused; for, while a portion of the instruction may have been correct, the latter portion, which was the most pertinent to the issues involved, did not state the law.

In *Wheeler v. State,* 34 Ohio St. 394, 32 Am. Rep. 372, where the defendant relied on insanity for a defense, and, as evidence tending to prove the defense, offered a record from the probate court showing that four years previous to the commission of the alleged crime an inquest had been held in that court, and that he had been adjudged insane and confined in an asylum, it was held that the evidence was admissible. The court there cited 2 Phillips on Evidence, 266, where it is said: "An inquisition of lunacy is evidence on the trial of an indictment to show that the prisoner was insane when he committed the offense;" also Sharswood's Starkie's Evidence, 407; Shelford on Lunatics, 74; and many other authorities, to sustain the decision. In that case it was held, that inquests of this character are

analogous to proceedings *in rem* affecting the general and public interests, and no one can strictly be regarded as a stranger to them; and that the weight of such testimony is for the jury in each case. The whole record of the case was held admissible, the record consisting of affidavits, and the certificate of the physician setting forth the facts and giving a detailed statement of the case. We think both authority and reason sustain the admission of such testimony as throwing some light upon the issues involved, and to be weighed by the jury as any other pertinent evidence in the case.

Even if it appeared from the record that this insanity inquest proceeding was taken to the jury room, there is no prohibition thereof under § 5004, Bal. Code, cited and relied upon by appellant; which section provides that, upon retiring for deliberation, the jury may take with them the pleadings in the cause and all papers which have been received as evidence on the trial, except depositions, or copies of such parts of public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession. In fact, this section especially warrants the action complained of, unless such record can be construed to be a deposition, which we think it cannot be. The cases from this court cited by appellant, in our judgment, do not sustain his contention in this regard.

We are unable to discover any merit in appellant's assignments 8, 9 and 10. We cannot say that the court abused its discretion in refusing to direct the clerk to issue subpoenas to witnesses to testify on motion for a change of venue. Such matters are generally presented on affidavits, and the statute invoked by appellant relates to the trial of the cause. Some authorities, it is true, hold that

the court may in its discretion call and examine witnesses on these preliminary motions, but there is no authority making it its duty to do so.

Assignment No. 25 relates to the alleged error of the court in sustaining objections to certain questions asked witness McCartney, on cross-examination in relation to a former conviction for burglary. The record shows that the questions were asked and answered without objection. It is alleged in the same assignment that the court erred in not sustaining objections to the following question, propounded on cross-examination to appellant's witness, Paul Underwood: "Have you ever been convicted of a crime? Answer: Yes sir, of murder in the second degree. My case has been appealed and is pending in the supreme court." Appellant relies on the case of *State v. Payne,* 6 Wash. 563, 34 Pac. 317, but that case is not in point, as was shown by this court in *State v. Ripley,* 32 Wash. 182, 72 Pac. 1036, where it was held that it was proper on cross-examination to ask the witness whether he had ever been convicted of a felony. The statute, § 5992, Bal. Code, provides that no person offered as a witness shall be excluded from giving evidence by reason of conviction of crime, but that such conviction may be shown to affect his credibility. The question here asked was squarely under the provisions of the statute, and the answer showed that the conviction was for a felony and not for a misdemeanor, as in the case of *State v. Payne, supra.* No error was committed in overruling the objection to this question.

Assignment of error No. 8 relates to the alleged error of the court in refusing to sustain the motion asking for a change of venue. A discussion in detail of the evidence offered in support of this motion would not be profitable. We have, however, particularly examined the voluminous

testimony and exhibits brought here by the appellant, tending to show that crime was rampant in the city of Seattle, and that the newspapers of that city were laden with sensational reports of sensational crimes committed both at home and abroad, to such an extent that, it is claimed, the public mind was inflamed to such a degree that one charged with a heinous crime could not obtain justice. But the general showing made here, if deemed effective, would preclude the trial of all criminal cases in King county, and the particular showing made in regard to the newspaper and other talk of the crime alleged to have been committed by this defendant exhibited only the feeling ordinarily prevalent in a community where a heinous crime of this kind has been committed. On an examination of the whole testimony adduced, we cannot say that the court abused its discretion in denying the motion for a change of venue.

No error was committed in sustaining objections to the questions asked Doctors Ross and Bories. The testimony elicited was either immaterial or purely hearsay.

The answer to appellant's complaint that the court refused to instruct the jury in writing, is that the court did so instruct. The statute does not require the instructions to be in any particular order or form, or to be necessarily engrossed on one paper. In this case the judge took the written instructions submitted by the state and those submitted by the appellant, giving such instructions from each as he thought properly stated the law, and marking those portions rejected with a lead pencil. The only object of the law in relation to written instructions must be to preserve the instructions actually given, so that they may be reviewed on appeal, and it is stipulated in this case that certain instructions were given and certain ones refused; so that, in any event, no prejudicial error was

committed, and we think there was a substantial compliance with the law.

No error was committed by the court in refusing to grant appellant's petition for a removal of his case to the United States court. The statute relied on, we think, has no application to this character of cases.

As to assignment 24, secondary evidence is always admissible to prove the contents of written instruments which are lost. The alleged error in not sustaining the challenges for cause to jurors Carr, Ziegler, and Wilson, if error at all, was without prejudice, as they were afterwards removed by peremptory challenges. *State v. McCann,* 16 Wash. 249, 47 Pac. 443, 49 Pac. 216. And under the rule announced in *State v. Moody,* 7 Wash. 395, 35 Pac. 132, the error, if error it was, in not sustaining challenge for cause to the juror Brown, was not prejudicial for the reason that the defendant proceeded to trial without exhausting his peremptory challenges.

We are not disposed to interfere with the discretion exercised by the court in refusing to grant a continuance on account of the absence of the winesses Relyea and Osman, which comprises appellant's eleventh assignment. Nor was there any error in allowing Doctors Loughrie, Willis, Ford, and Tripp to testify in rebuttal, although their names had not been indorsed on the information; nor in admitting the testimony of witness Ella Brace.

We believe the court properly instructed the jury on the law applicable to the case, and that the instructions asked by the defendant which embodied the law had all been given in another form by the court. Without further specialization, we are unable to find any prejudicial error in any respect.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, HADLEY, and ANDERS, JJ., concur.