PARDEE, J.
Plaintiff in error, referred to herein as the defendant, was indicted by the April, 1921, grand jury of Summit county, Ohio, for the crime of murder in the first degree, for the killing of his wife, Nora Moffett, on March 29, 1921. On April 28, 1921, he was arraigned, entered a plea of not guilty, and being unable to *752 employ counsel to defend himself, on May 2, 1921, the court appointed counsel for that purpose. Thereafter, a special venire was issued for jurors to try said case, returnable on Monday, June 6, 1921. On June 3, 1921, the attorneys for said defendant suggested to the trial court that he was not sane, and presented to the court a certificate of Dr. D. IT. Morgan, a reputable physician of said county, as provided by law in that respect. On said day the court ordered a special jury to be impaneled to try the question of whether or not said defendant was then sane, and the hearing on this question was set for June 7, 1921, and a jury was drawn and a special venire issued, returnable on that day. On said last above named date a jury was impaneled and sworn to try said issue, and evidence was offered by the accused and the state, and said case was continued from day to day until Saturday, June 11, 1921, on which day, after arguments of counsel and the charge of the court, a verdict was returned by the-jury finding the defendant sane. On Monday, June 13, 1921, the case went to trial upon the indictment, a jury was impaneled and sworn, and after hearing the evidence both for the state and the defendant, the arguments of counsel and the charge of the court, on June 7, 1921, the jury found the defendant guilty of murder in the first degree, as charged in the indictment. A motion for a new trial was duly filed by the defendant, which was overruled, sentence ordering execution was pronounced upon him, and the ease is now here on a petition in error to reverse that judgment.
The defendant in his trial on the indictment did not deny that he billed his wife in the way and on the date set forth in the indictment, but, as his defense, claimed that he was insane at the time of the act and was therefore not responsible for the crime he committed. The defendant claims as grounds for setting aside the judgment entered in the case, and for a new trial, the following, to-wit:
(1.) That the court erred in refusing to grant the defendant a week’s time after the case was heard on the question of the insanity, for the further preparation of his case, and for the purpose of procuring one of his witnesses;
(2.) That the court erred in refusing to allow the defend *753 ant to inquire of prospective jurors on their voir dire, if they would consider the various degrees of murder that would be explained to them by the court, even though it had been shown beyond a reasonable doubt that the defendant killed his wife;
(3.) That the court erred in the rejection and admission of evidence, prejudicial to the rights of the defendant;
(4.) That the attorneys for the state were guilty of misconduct in referring to the trial in which the defendant was adjudged sane;
(5) That the attorneys for the state were guilty of misconduct in their argument to the jury.
We will consider the several points raised by the defendant in the order above named.
As to the first assignment of error: The ease went to trial upon the indictment, on June 13, 1921, and on that date the defendant asked for a continuance of one week for further preparation of the ease, and for the reason that Dr. Morgan, one of the doctors who examined the defendant for insanity, and a material witness, was out of the state, and would not be able to be present. The defendant was indicted on April 23, 1921, and on May 2, 1921, the attorneys for the defendant were appointed by the court. Whether the court should give the defendant further time rested entirely in the sound discretion of the court, and we feel that the time allowed between the appointment of counsel and the day of trial gave the defendant ample time to prepare his case and procure the attendance of his witnesses, and the court did not err in refusing to grant the continuance.
As to the second assignment of error: We do not believe that it is a rule of law that the defendant is entitled to pick out questions of this kind and submit them to prospective jurors, as the presumption is that the jury will follow the instructions of the court as given to them, and the proper way to test them on this point is to ask them generally in reference thereto. Any other rule would result in needless questions and confusion. We find no error in this respect.
As to the third assignment of error: We have been over all of the various questions asked in the trial and all the objections and exceptions referred to, and about which the plaintiff in *754 error complains, and while we find some errors in the rulings of the court upon the admission of evidence, we do not find any errors, singly or together, which we consider prejudicial to the defendant and which prevented the defendant from having a fair trial.
As to the fourth and fifth assignments of error: The fourth and fifth errors complained of by the defendant will be considered together, as they principally grow out of alleged misconduct by the prosecuting attorney, made in reference to the special trial had in regard to the sanity of the defendant. If the trial court was right in keeping out reference to this former trial, then the prosecuting attorney was wrong in making reference to the same, and it would be such prejudicial error as would require a reversal of the judgment on that account, and the admonition of the court to the jury in his general charge to disregard the same could not and would not cure such serious errors. If the trial court was wrong, then the prosecuting attorney had a right, under general rules applicable thereto, to refer to the former trial, in his examination of prospective jurors, examination of witnesses, and in argument to the jury, and it would not be error for him to do so, although the trial court had ruled otherwise.
These alleged errors arise from the statements of the prosecuting attorney in the examination of prospective jurors and during the trial of the case and in argument to the jury, about the special jury trial where the defendant was found sane. In the trial upon the indictment, the defendant relied entirely upon the plea of insanity as a defense and offered in evidence the testimony of many witnesses in that respect. The state then in rebuttal offered in evidence the testimony of many witnesses to overcome that defense, and offered in evidence the verdict of the jury in the special trial in which the defendant was found sane. This latter evidence offered on behalf of the state was excluded by the trial court. In the argument to the jury by the state, frequent reference was made to this trial, notwithstanding the trial court had excluded it, and each time the attorneys for the defendant promptly directed the court’s attention to the same and in each and every instance the trial court ignored the *755 objection, and defendant each time took exception. The trial court in his general charge attempted to correct this seeming neglect on his part by directing the jury to disregard the same.
In order to arrive at a proper conclusion as to these errors it has been necessary to study the statutes of Ohio and other states authorizing- a special jury to be impaneled to try the question of whether the defendant is sane at the time of such special trial, and the general rules of evidence in regard to proving insanity as a defense to crime. Under the Ohio rule, insanity at the time of the commission of the alleged offense is a complete defense, but the burden of proving the same rests upon the defendant and he must prove it by a preponderance of. the evidence. In order to prove and disprove it, evidence of the conduct, sayings and actions of the defendant on the day of the crime and both before and after that day is properly admitted as tending to show and prove his mental condition at the time of the crime. This is generally shown by the testimony of witnesses who have known him and been in such association with him as to be able to say whether he has acted rationally or irrationally. Frequently adjudications have been allowed to be offered in evidence to prove or disprove insanity of the accused at a time not too remote from the date of the commission of the crime. These adjudications in both civil and criminal cases have been admitted solely upon the ground that they prove the mental condition at the time the special finding was made, and only tend to prove and have a bearing upon the mental condition at the time of the alleged crime, and are in no way conclusive of the mental condition at that time, and are admitted only as one item of evidence bearing thereon, and like all other evidence, the jury is to be the sole judge of the weight to be given to the same. Adjudications of this character are not even prima evidence of the mental condition at the time of the offense set forth in the indictment, and frequently are of little weight as evidence. In the early case of Wheeler v. State, 34 Ohio St. 394, an inquisition of lunacy held four years before was held admissible :
“On A’s trial for a crime, he relied on insanity as a defense, and as evidence tending to prove the defense offered a record from the probate court, showing that four years previous to the *756 commission of the alleged crime an inquest had been held in that court, and that he had been adjudged insane and confined in an asylum. Held, that the evidence was admissible.”
In another case recently decided by the Supreme Court of Washington, being the case of State v. Champoux, 33 Wash. 339 [74 Pac. 557], the court says in the fourth paragraph of the syllabus :
“Where, on a prosecution for murder, the defense was insanity, the main trial being suspended while a special jury tried the issue of sanity, it was proper to admit in evidence the record of such proceedings, showing the verdict of sanity, though such record was not conclusive. ’ ’
And in the opinion, the court says:
“We think the testimony was properly admitted, as other testimony was admitted, bearing on the question of insanity— not as conclusive evidence but simply as competent evidence, although some courts hold such testimony to be conclusive of insanity at the time the special verdict was rendered. Thus, in People v. Farrell, 31 Cal., 577, the court held that the verdict of a jury called to try the question of the sanity of the defendant, the verdict .being that he was insane, was conclusive that he was insane at the time the verdict was rendered, and was therefore admissible in evidence on his trial for the offense, as tending to show that he may have been insane when the offense was committed. Of course, the same reasoning would sustain the admission where the verdict was one of sanity. Under this authority the following instruction asked by the counsel for appellant: ‘The court instructs you that the verdict of sanity returned by the jury is only presumptive evidence, but not conclusive, of the defendant’s sanity upon the day when the said verdict was rendered, and said verdict shall not have any bearing upon the question of defendant’s sanity or insanity at the time he was accused of assaulting Lottie Brace’ — was properly refused, for, while a portion of the instruction may have been correct, the latter portion, which was the most pertinent to the issues involved, did not state the law. In Wheeler v. State, 34 Ohio St. 394 [32 Am. Rep., 372], where the defendant relied on insanity for a defense, and as evidence tending to prove the defense, offered a record from the probate court showing that four years previous to the commission of the alleged crime an inquest had been held in that court, and that he had been adjudged insane and con *757 fined in an asylum, it was held that the evidence was admissible.”
In Smedley v. Commonwealth, 139 Ky. 767 [127 S. W. 486], the court holds :
“Where accused relied on insanity at the time of the commission of the crime, and there was evidence that during the time of the commission of the offense he was addicted to the use of drugs impairing, if not destroying, his mind, the inquest of lunacy, held at the same term of court at which the trial occurred, was admissible.”
And the court in its opinion says:
“We are further of opinion that appellant’s complaint of the exclusion by the court from the consideration of the jury of the record containing the writ, judgment, and other proceedings in the inquisition of lunacy offered in evidence by appellant to show that he had properly been found and adjudged of unsound mind shortly before his trial is well founded, for the exclusion of this evidence was error.”
In Bond v. State, 129 Tenn. 75 [165 S. W. 229] in the third paragraph of the syllabus the court holds:
“Evidence of insanity after the commission of the offense charged is competent to enable the.jury to determine the state of accused’s mind at the time the offense was committed.”
And in the opinion the court says:
“Upon the foregoing authorities, we also think that the court should have admitted the verdict of the jury and the judgment of the court upon the defendants plea of present insanity. This was a judicial declaration that the defendant was insane. It is true that it established his insanity at a period of time subsequent to the date of the alleged offense; but evidence of subsequent insanity is competent for the consideration of the jury in determining the state of the defendant’s mind at the time of the offense.”
See also: Reeves v. State, 65 South, 518; People v. Farrell, Supra; State v. Bowsher, 7 Dec., Re. 442 (3 Bull. 187); State v. O’Grady, 5 Dec. 654 (3 N. P. 279).
If the findings in a lunacy inquest in an ex parte proceeding are admissible in a criminal case, as was held in our own state in *758 the ease of Wheeler v. State, supra, where the patient was not represented by counsel, and the proceedings were conducted without a jury, it seems to us that a regularly constituted and conducted adversary proceeding between the same parties, especially provided by law, to determine the sanity of the defendant at that time, demanded by the defendant as a matter of right, in a court of justice presided over by a judge, where the defendant was present in person and by counsel and where he had a jury impaneled and sworn and met the witnesses face to face, that the result of such a trial finding the defendant sane would be competent and proper evidence under proper instructions on the trial uhder the indictment, as bearing upon the mental condition of the accused at the time of the perpetration of the crime. This special proceeding is provided for the benefit of the defendant and is a preliminary hearing in the principal case, to determine whether the defendant is sane befox’e putting him upon trial under the indictment. This special proceeding cannot be invoked by the state, and before the jury provided for therein, can be called, affirmative action must be taken by the attorney for the defendant. The Secs. 13608 G. C. et seq., under which the special proceedings were conducted, were originally passed by the legislature of this state to provide a quick and uniform rule for the determination of the question as to whether the defendant was then insane. We do not believe the legislature intended to give the accused the right to invoke this special privilege and then have him repudiate the result when that result is unfavorable to him. We therefore find that the court did commit error in refusing to allow the state to offer such finding as evidence and to refer to it in the trial, unless it is prohibited by Sec. 13610 G. C., which reads as follows:
“If three-fourths of the jurors do not agree, or the verdict is set aside, another jury shall be impaneled to try the question. If the jury find the accused to be sane and no trial has been had on the indictment, a trial shall be had thereon as if the question had not been tried. If the jury find him to be not sane, that fact shall be certified by the clerk to the probate court, and the accused, until restored to reason, shall be dealt with by such court as upon inquest had. If he is discharged, the bond given for his support and safe-keeping shall contain a condition that, when *759 restored to reason, lie shall answer to the offense charged in the indictment, or of which he has been convicted, at the next term of the court thereafter and abide the order of such court. ’ ’
The words of the above section upon which the defendant relies are as follows:
“If the jury find the accused to be sane and no trial has been had on the indictment, a trial shall be had thereon as if the question had not been tried.”
If this contention is true, the general rule as heretofore found by us is completely nullified. If the trial shall proceed as if the question had not been tried, then no reference whatever could or should be made to anything that transpired in the preliminary trial. When the jury is being impaneled and though one or more of them are disqualified because of some connection with the preliminary trial, reference could not be made to these facts of disqualification and the defendant as well as the state might be prevented from having a fair trial.
Again, a witness for the state might be called who had testified to something in the former trial directly opposite or contradictory to his present testimony, and yet the defendant would be deprived of the right to impeach his testimony under the well known rules of evidence. Other instances might be given, but we think the foregoing are sufficient to demonstrate clearly that the legislature did not intend by the use of these inapt words to bring about any such condition in so important a matter as the prosecution of a man for felony, where his very life might be at slake, as in this case. But we do believe that these, words were intended to have a broader and more useful purpose and that they are intended to preserve and secure to the defendant the protection of the defense of insanity which he had before these sections were enacted, and that those sections should not impair that right. Any other rule would nullify some of the most sacred rights of the accused and could easily prevent him from having a fair and impartial trial. We therefore hold that these words do not and that the legislature did not intend to have them construed in the narrow manner contended for by the defendant.
Upon the testimony offered as to the insanity of the de *760 fendant at the time of the crime, we feel that the defendant did not sustain the burden of proving it by a preponderance of the evidence as required by law, and in our judgment the evidence was not sufficient to raise a reasonable doubt in the mind of the jury in relation thereto.
The other errors complained of by the defendant have been noticed by us, but we do not think -they are of enough importance to require especial notice here.
The defendant in our judgment has had a fair and impartial trial. He has had able attorneys appointed by the state to represent him, they have been diligent and painstaking in the preparation of his case, they have presented it to two juries and to two courts ably and well, and that he must now suffer is because of his own act in violation of the laws of God and man. We have given considerable time and thought to the law and evi- ' dence in this case and do not find any errors which were prejudicial to the defendant and which prevented him from having a fair trial. The judgment is therefore affirmed.
This court having on the application of the defendant granted him a stay of execution in order that he might prepare and present his case to this court, it is now ordered that the execution of sentence pronounced upon him by the trial court be carried out as provided by law on Friday, March 24, 1922, and a journal entry may be prepared accordingly.
Washburn and Treash, JJ., concur.