# LUKE EDMONDSON v. THE STATE.

1. INDICTMENT FOR MURDER.—See an indictment held to be insufficient.
2. An indictment for murder must show the date of the alleged death, and that such death was the result of the injury inflicted by the accused.
3. The omission of the word "did" in the clause of the indictment alleging the injury charged vitiates the indictment.
4. CHARGE OF COURT.—It is error to charge the jury that they must

either convict of murder in the first degree or acquit, if by any possible legitimate construction of the evidence the jury might have found the defendant guilty of murder in the second degree.

5. DYING DECLARATIONS inadmissible, unless made under a consciousness of approaching death. See facts held insufficient to show such condition of mind as to allow of the introduction of such declarations.

6. OATH OF PETIT JURY.—If the record assumes to set out the oath, it should set out the statutory oath. It is sufficient to recite that the jury was sworn "*according to law.*"

APPEAL from Lamar. Tried below before the Hon. John C. Easton.

*Johnson & Miner,* for appellant.

*George Clark, Attorney General,* for the State.

GOULD, ASSOCIATE JUSTICE.—Omitting the caption and formal recitation, the indictment in this case is as follows:

"That on the first day of June, A. D. 1872, in the county of Lamar, in said State of Texas, with force and arms, one Luke Edmondson, in and upon Julia Edmondson, a child, (one unintelligible word appears here that I am not able to make out.—Clerk,) willfully and of his express malice aforethought, did make an assault on the said Julia Edmondson with a certain stick, had and held in his right hand, her, the said Julia Edmondson, unlawfully beat, bruise, and wound; and the said Luke Edmondson her, the said Julia Edmondson, willfully, feloniously, and of his express malice aforethought, then and there cruelly and unmercifully did chain with chains, and did tie with ropes, and, so chained and tied, did compel her to work and labor beyond her strength; and, so chained and tied, did expose her, the said Julia Edmondson, to the fierce rays of the sun at noon-day in the middle of summer, and the piercing winds of mid-winter, until finally, by means of said cruelty and barbarity, the said Julia Edmondson, child as aforesaid, died. And so the jurors afore-
32

said, upon their oath aforesaid, do say that the said Luke Edmondson the said Julia Edmondson, in manner and form aforesaid, feloniously, willfully, and of his express malice aforesaid, did kill and murder, contrary," &c.

Under this indictment, the defendant being on trial, the court instructed the jury that the defendant was "guilty of murder in the first degree, or he was not guilty of any degree of homicide." The verdict was guilty of murder in the. first degree, the punishment being fixed at imprisonment for life.

The record embodies three bills of exceptions to the rulings of the court in admitting evidence; sundry charges asked and refused; a motion for a new trial; and a motion in arrest of judgment, by which last the sufficiency of the indictment is fairly presented for examination.

We think the indictment wholly defective, first, because it does not show when Julia Edmondson died. It is essential that it should appear from the indictment that death happened within a year and a day after the injuries were inflicted. (Wharton Am. Cr. Law, sec. 1073; 1 Russ. on Crimes, 504; 4 Blackburn, 197.)

The indictment is also defective because it does not, with sufficient certainty, charge that death was the reason of the injuries alleged to have been inflicted by defendant. It alleges that deceased died "of said cruelty and barbarity;" but these words are then, for the first time, used in the indictment, and the precedents which we have examined do not justify such looseness of averment.

In addition to these defects, which were of themselves fatal, the averment, as to injuries inflicted with a stick, not only lacks the proper specification of time and place, but omits the word "did" in a connection where it was material—an omission which has been repeatedly held good ground for quashing an indictment. (State *v.* Hutchinson, 26 Tex., 112; State *v.* Daugherty, 30 Tex., 360.)

We also think it was error in the court to instruct the

jury, in substance, that they must find defendant guilty of murder in the first degree or acquit him. Assuredly this was erroneous, if by any possible legitimate construction of the evidence the jury might have found defendant guilty of murder in the second degree. The statute distinguishes between the degrees of murder as follows: "All murder committed by poison, starving, torture, or with express malice, or committed in the perpetration or in the attempt at the perpetration of arson, rape, robbery, or burglary, is murder in the first degree, and all murder not of the first degree is murder of the second degree." (Pas. Dig., art. 2267.) There is no evidence that justifies the assumption, as a fact established, that the deceased died by starving or torture, and there is no evidence whatever that brings the act within the other specified cases of murder in the first degree, unless it be under the general head of murder with express malice. Giving to the evidence the strongest construction against defendant, it still leaves it questionable, not only whether he intended to take the life of his daughter, but whether he even acted with a formed design to inflict on her serious bodily injury. If, in the absence of his parental authority, defendant, with a sedate mind, was guilty of inflicting such cruel blows on Julia Edmondson, and subjecting her to such exposure as resulted in her death, it would still be possible that this may have been done with such motives and intentions as would have justified a verdict of murder in the second degree. The code recognizes the authority of a parent to chastise his child, and adds: "Yet if this be done with an instrument likely to produce death, or if, with a proper instrument, the chastisement be cruelly inflicted, and death result, it is murder." (Pas. Dig., art. 2234.) It is not made necessarily murder of the first degree. Such cases at common law were murder or manslaughter, according to the circumstances. (Whart. Cr. Law, sec. 1014; Whart. Law of Hom., 129.)

---

---

The admissibility of the dying declarations of Julia Edmondson is also claimed to have been erroneous; and as the same question will necessarily again be presented on another trial, we will not leave it unnoticed. It seems that whatever injuries the deceased received from defendant were inflicted prior to February, 1872, fully three months before her death, and that during the last two ·weeks before she died she was at the house of M. L. Armstrong, who testifies that during that time she frequently spoke of dying; said she was going to die, and expressed no hope of recovery; that she did not die unexpectedly, but kept growing weaker and weaker until she died; that she repeated her statements down to the morning of the day she died, her statement being voluntary and she being of sound mind. On cross-examination, he stated that he could not say certainly whether the girl was told she would die or not; that it was possible that she walked about the house the day before she died. These are the leading facts developed in the bill of exceptions and statements of facts bearing on the question, and they fail to satisfy us that she had such a consciousness of approaching death as was contemplated by the statute, which is but declaratory of the common-law rule.

For aught that appears, she may have believed that she was not going to die for weeks or months to come. She had already lived at least two months and a half, and during that time her sores and wounds had mostly healed. In view of these facts, and the absence of any necessarily fatal injuries known to be such, it ought to have been shown not merely that she believed that she was going to die, and that she would never get well, but that she was under "the immediate apprehension of death." (Burrell $v$. The State, 18 Tex., 731; 3 Phillips on Ev., 252.)

It is not necessary that we should do more than to call attention to what we believe to be requisite. The facts may perhaps be so developed on another trial as to show

the admissibility of the declarations, so far as they related to the facts of injuries received.

We will not discuss other questions of evidence presented by the record, but which may arise on another trial under a new indictment. We will call attention, however, to one other irregularity, with the view of having its repetition guarded against. The record recites that the jury were "sworn to well and truly try the issue joined between the State of Texas and Luke Edmondson." This is not the oath required by law to be administered. If the record assumes to set forth the oath, it should do it correctly. It is sufficient, however, if it states that the jury were sworn "according to law," without attempting to set out the oath, and that, we think, is the better plan.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.