Elmo ELLIOTT, Petitioner,

v.

Clarence M. MILLS, Judge of the District Court of Oklahoma County, Seventh Judicial District, and the following duly elected, qualified, and acting District Judges of Oklahoma County, Seventh Judicial District, State of Oklahoma, to-wit: Glen O. Morris, A. P. Van Meter, William L. Fogg, Fred Daugherty, and W. R. Wallace, Jr., Respondents.

No. A–12716.

Criminal Court of Appeals of Oklahoma.

Feb. 25, 1959.

John M. McPherron, of Foliart, Hunt & Shepherd, Marion P. Opala, of Miskovsky & Miskovsky, Oklahoma City, for petitioner.

James W. Bill Berry, County Atty., Ryland F. Keys, William R. Saied, Asst. County Attys., Oklahoma City, for respondents.

NIX, Judge.

Petitioner, Elmo Elliott, was charged by information in the District Court of Oklahoma County with the crime of manslaughter first degree, and in this proceeding asks this court to issue a writ, prohibiting the District Court of Oklahoma County from prosecuting such action.

The information under which the petitioner stands charged reads as follows:

"The State of Oklahoma, Plaintiff, v. Elmo Elliott, Defendant,

"In the name and by the authority of the State of Oklahoma, comes now James W. Bill Berry, the duly qualified and acting County Attorney in and for Oklahoma County, State of Oklahoma, and on his official oath gives the District Court in and for said Oklahoma County and the State of Oklahoma, to know and be informed that heretofore, to-wit:

"on the 9th day of October, A.D., 1958, in Oklahoma County, State of Oklahoma, whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of Manslaughter in the First Degree in the manner and form as follows, to-wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, wrongfully, unlawfully and feloniously cause the death of Donald A. Haynes by wilfully, wrongfully, unlawfully and feloniously driving and operating a 1955 Ford Pickup Truck motor vehicle bearing 1957 Oklahoma

License No. 301F/T994, with a careless and culpable disregard of the rights and safety of others; in that while driving said motor vehicle west on Southeast Fifteenth Street, in Oklahoma City, in the said county and state, on July 24, 1957, he drove to the left of the center line in a reckless and wanton manner, and struck and collided with a 1954 Ford sedan motor vehicle, bearing 1957 Oklahoma License No. 1–61209, and as a result of the said collision, the said Donald A. Haynes suffered certain mortal wounds and injuries on his body of which mortal wounds and injuries the said Donald A. Haynes died on October 9th A.D. 1958."

To this charge petitioner entered his plea of not guilty and later was permitted to withdraw the same for the purpose of filing the following pleadings:

"Comes now the defendant, Elmo Elliott, and moves the Court as follows:

"1. To quash the information filed herein for the reason that said information on its face fails to charge a public offense under the laws of the State of Oklahoma.

"2. The defendant demurs to information filed herein for the reason and upon the ground that the same is tainted on its face with a fatal and vitiating defect.

"3. The defendant states that the allegations contained in the information filed herein show on their face that the offense that is purportedly charged in that information was abated at the time of the filing thereof and, therefore, cannot constitute the basis for a criminal prosecution under the laws of the State of Oklahoma.

"Wherefore, defendant prays that the information filed herein purportedly charging the offense of Manslaughter in the First Degree be quashed, dismissed and held for naught for the reasons aforesaid and that this defendant be discharged and his bond exonerated."

The demurrer, motion to dismiss, and plea in abatement was overruled.

The petitioner comes to this court and asks for a writ of prohibition upon the grounds that the information fails to state facts constituting a public offense under the law or within the meaning of the laws of the State of Oklahoma.

Petitioner contends that the action is barred by the common law rule that a person cannot be prosecuted for a homicide unless the deceased died within one year and a day after the commission of the alleged injury. By virtue of petitioner's demurrer he admits all allegations of the information, but relies exclusively upon the application of the common law rule that the information shows upon its face that more than a year and a day had elapsed between the infliction of the mortal wound and the death of the deceased. Upon this premise the court is confronted with numerous questions of law: Is it the common law that death must ensue within a year and a day as a prerequisite to criminal homicide? How far throughout the United States does the common law rule prevail? Is the common law rule applicable in this state? Was the trial judge justified under the law in overruling the plea in abatement? Was he justified by law in overruling the demurrer and the motion to dismiss? Are these matters properly before us as to justify the issuance of a writ of prohibition?

In determining the question of the common law rule, this court has done conscientious and exhaustive research in law as well as history. It is of first impression in this state. Though it has been adjudicated in numerous jurisdictions throughout the United States, it has never been presented to this court in its 52 years of existence.

In order that we may properly consider the question whether the rule that to constitute the crime of homicide, death must ensue within 366 days of the receipt of

the fatal stroke it is necessary to briefly review its incorporation in the common law. The first recognition of this rule is to be found in the Statutes made at Gloucester on the 4th of October, 1278, § 6 Ed. 1 ch. 9. Also, Reeves History of English Law, Vol. 2, wherein it was adopted that an appeal for homicide could not be abated for default if the party died within the year and the day after the deed was done. Thus, the rule had its official birth in the Statute of Gloucester some 700 years ago. A survey of many text authorities discloses an invariable and uniform assumption that the rule has been applied generally at common law to all forms of felonious homicide.

The brief of petitioner lists numerous citations as to the history of the rule and in support of his contention that the rule is universally accepted. These citations and authorities indicate diligent inquiry into the history of the rule and are worthy of repeating.

In Hawkins' "Pleas of the Crown," Volume I, 8th Edition by Curwood, 1824, ch. 13, Section 9, at page 93, it is stated:

"Also it is agreed, that no person shall be adjudged by any act whatever to kill another who doth not die thereof within a year and a day after; in the computation whereof, the whole day in which the hurt was done shall be reckoned the first."

In Chitty on the "Criminal Law", Volume 3, at page 726, the rule is stated:

"And in no case can a man be adjudged guilty of homicide unless the death takes place within a year and a day after the injury to which it is ascribed; which computation is made inclusive of the day on which the wrong was committed, Book IV, Blackstone's Commentaries, 197."

In "Hallsbury's Laws of England," Volume 9, 2nd Edition, by Lord Hailsham, page 428, Section 734, the author states:

"If death does not ensue until after the expiration of a year and day from the day when the injury was inflicted, it is an irrebuttable presumption of law that the death is attributable to some other cause and the person who inflicted the injury is not punishable for either murder or manslaughter."

In Stephen's book on "History of the Criminal Law of England", Volume 3, at pages 7 and 8, the author states:

"I pass next to the cases in which, though the connection between death and the injury is direct and distinct, other causes have intervened sufficiently to stem from the independence of the injury to prevent the case from being treated as homicide. * * * The only cases worth examining are those which illustrate the limit. One obvious limit is length of time. Instances of death from wounds or other injuries received many years before death are not unknown. In some cases of this sort the connection is clear. In general, it would be obscured. The law of England had laid down an arbitrary rule for criminal purposes upon this subject. No one is criminally responsible for a death which occurs upwards of a year and a day (that is, more than a complete year reckoning the whole of the last day of the year) after the act by which it was caused."

In Russell's "Law of Crimes", 7th English Edition and 1st Canadian Edition, at page 69, the rule is stated:

"*Time of Death.* No person can be convicted of murder or manslaughter of another, who does not die within a year and a day after the stroke received, or cause of death administered and a computation of which the whole day upon which the hurt was done is to be reckoned the first."

Wharton's "American Criminal Law", Volume 2, Section 1073, states:

"Indictment upon which it does not appear that the death happened within a year and a day after the wound was given, is fatally defective; because, when the death does not ensue within a year and a day after the wound is inflicted, the law presumes

that it preceded from some other cause * * *."

In "Warren on Homicide" (1938) Volume 1, at Section 60, under the topic *"Time of Death"*, it is stated:

"Criminal homicide is regarded as committed at the time of the giving of a fatal blow or wound, though the actual death may not occur until a subsequent day, and the accused is to be tried by the laws in force at the time the injurious act is done. To constitute a homicide, it is not necessary to show that death had resulted instantly. As a general proposition, criminal homicide is the unlawful taking of the life of one human being by another in such a manner that the death occurs within one year and a day from the time of the dealing of the mortal wound. But if the death does not occur until more than one year and a day has intervened, it is presumed the wound or injury received was not the cause of the death, and the person who inflicted it cannot be held criminally responsible for the homicide. That was the rule at the common law. The reason assigned was that if the person alleged to have been murdered 'die after that time, it cannot be discerned, as the law presumes, whether he died of a stroke, or poison, etc., or a natural death, and in case of life, a rule of law ought to be certain.' And such is the rule in this country."

In "Perkins on Criminal Law", University Text Books series, (1957) at page 605, the rule is stated:

"At one narrow point, in the homicide cases, there is a purely mechanical test which had been handed down from ancient times. Under this test, no cause of death will receive judicial recognition as such, if it antedated the result by more than 'a year and a day.' Unless the death occurs within this period after the wound or other harm complained of, the law conclusively presumes that the loss of life was due entirely to other causes and will not hear evidence to the contrary."

In the case of Commonwealth v. Evaul, 5 Pa. Dist. & Co. R. 105, a more modern interpretation is stated:

"Wharton, in his work on Homicide (3rd ed.) chap. 111, § 18, page 19, says, in his discussion of homicide in general, that: 'By the English common law, the death must have occurred within a year and a day from the date of the injury received.' So, also, Clark, in his 'Criminal Law' (3rd ed.) page 17 says: 'The death must have resulted within a year and a day after the blow is given, or other act done which is alleged as the cause of death; otherwise, the law conclusively presumes that death resulted from some other cause.' To the same effect are: Bishop's 'New Commentaries on the Criminal Law' (8th ed.) vol. 2, page 641: 'A Treatise on the Law of Homicide,' published at Russel's 'Law of Crimes' (1910) Book 4, chap. 1, part 1, § 5, page 690, (7th ed.); Edward East's 'Treatise of the Pleas of the Crown,' published in 1803, in the part devoted to requisites of an indictment."

These authorities and many others that could be cited are conclusive that the year and a day rule is well established in the common law. That the application of this rule has been adopted or affirmed generally throughout the United States is likewise conclusively established. The rule prevails with few distinguishable exceptions either by court decision or statutory adoption. The rule is aptly stated in 40 C.J.S. Homicide § 12, p. 856:

"At common law, and in the absence of statutes otherwise providing if more than a year and a day intervene between the injury and the death of the victim, the injury is not legally deemed the cause of the death, and the person who inflicted it is not criminally responsible for the homicide."

See Howard v. State, 24 Ala.App. 512, 137 So. 532, certiorari denied 223 Ala. 529, 137 So. 535; Head v. State, 68 Ga.App. 759, 24 S.E.2d 145; State v. Moore, 196 La. 617, 199 So. 661, 662, quoting Corpus Juris; State v. Spadoni, 243 P. 854, 856, 137 Wash. 684, citing Corpus Juris.

The rule is explained in 26 Am.Jur. § 46, p. 190 as follows:

"§ 46. Effect of Lapse of Time.— With only a few exceptions the common law rule that in order to constitute punishable homicide death must ensue within a year and a day from the infliction of a mortal wound, obtains throughout the United States, in the absence of any local statute abrogating the common law rule. Unless death takes place within this period, the law draws the conclusion that the injury is not the cause of death or cannot be discerned; and neither the court nor the jury may draw a contrary conclusion. In some jurisdictions the rule derives its support from the common law, in some from statutory enactments which expressly include this element in the definition of homicide, and in some from the rule that where a statute creates a crime by name without defining it, the courts may do so by the aid of common law definitions. If the statute defining murder merely provides the punishment therefore, the common law rule applies."

These are innumerable decisions from the appellate courts of other jurisdictions adhering to this rule, including Indiana, State v. Daily, 191 Ind. 678, 134 N.E. 481, 20 A.L.R. 1004; Epps v. State, 102 Ind. 539, 1 N.E. 491; Kee v. State, 28 Ark. 155; Brassfield v. State, 55 Ark. 556, 18 S.W. 1040; Fisher v. State, 109 Ark. 456, 160 S.W. 210; Glover v. State, 116 Ark. 588, 172 S.W. 876; State v. Bantley, 44 Conn. 537, 26 Am.Rep. 486; Rose v. Com., 156 Ky. 817, 162 S.W. 107; State v. Kennedy, 8 Rob. (La.) 590; State v. Conley, 39 Me. 78; Commonwealth v. Snell, 189 Mass. 12, 75 N.E. 75, 3 L.R.A.,N.S., 1019;

Lester v. State, 9 Mo. 666; State v. Borders, Mo., 199 S.W. 180; Debney v. State, 45 Neb. 856, 64 N.W. 446, 34 L.R.A. 851; State v. Haney, 67 N.C. 467; Bowen v. State, 1 Or. 270; Percer v. State, 118 Tenn. 765, 103 S.W. 780; Edmondson v. State, 41 Tex. 496; Hardin v. State, 4 Tex.App. 355, 370; Clark v. Commonwealth, 90 Va. 360, 18 S.E. 440; State v. Champoux, 33 Wash. 339, 74 P. 557; State v. Phillips, 59 Wash. 252, 109 P. 1047. For other citations see Annotation, 20 A.L.R. 1006, 93 A.L.R. 1465; also see Georgia, Head v. State, 68 Ga.App. 759, 24 S.E.2d 145; Howard v. State, 24 Ala.App. 512, 137 So. 352; Ball v. United States, 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377.

Numerous other decisions could be cited from those states that have by legislative action adopted the year and a day rule by statute. These states are Arkansas, Arizona, California, Colorado, Delaware, Idaho, North Dakota, Illinois, Montana, Utah, and Nevada. It is to be noted that every state that has considered this matter has held in favor of the application of the common law rule with the exception of one. The New York Court has passed on the matter in the case of People v. Brengard, 1934, 265 N.Y. 100, 191 N.E. 850, 93 A.L.R. 1465, said decision being largely based upon a decision by the Appellate Division of the New York Court, People v. Legeri, 1933, 239 App.Div. 47, 266 N.Y. S. 86. Though these two cases, both of New York state, are contrary to the majority rule, it is well to briefly review the reasoning in these two cases that distinguish them from the cases from other jurisdictions.

The Legeri case which laid the precedent for the Brengard case, takes the view that the common law rule had been abrogated by legislative action. They hold that there is no common law crime in that state because of legislative adoption of a penal code. They call attention to the fact that Chap. 22 of the "Laws of 1787" provided that a wilful killing by poisoning of any person shall be deemed premeditated murder. By chapter 29 of the "Laws of 1813"

poison with intent to murder where death did not ensue within a year and a day was punishable with imprisonment in the state prison for a term of not exceeding 14 years. Thus, wilful poisoning was premeditated murder in 1787, while in 1813 where death did not ensue within a year and a day, it was a crime of lesser offense. Also, under chapter 22, "Laws of 1787" one was guilty of wilful murder who stabbed another under certain circumstances, if the one stabbed died within six months. Thus, a limitation of time between blow and death was determinative of the quality of the act. The New York legislature in 1828 revised a penal code, "An Act Concerning Crimes and Punishments." At the same session a repealing act was passed by which the chapter 22 of the "Laws of 1787" was repealed.

The court said in the Legeri case:

"Thus, when the Legislature was compiling and consolidating the laws (1828) with reference to crime, it expressly repealed statutory rules similar to the year and a day rule under consideration. This indicates an intent to abrogate that rule." [239 App. Div. 47, 266 N.Y.S. 88.]

The Brengard case, supra, follows this line of reasoning with the additional theory that the adoption of their penal code supported the intent of the legislature to abrobate the common law. In speaking of the commission designated to compile the penal code the court said:

"When the object of the commission was so clearly expressed as to demonstrate a fixed intent to construct in detail a complete definition of each crime so that no part of the entire fabric of the law of crimes could be left to judicial reconstruction, the omission by the Legislature of any reference to a year and a day from the definition of murder must be deemed to have resulted from a set purpose." [265 N.Y. 100, 191 N.E. 852.]

Thus, it is to be determined from a study of the New York cases that they conclude that since New York once had statutes similar to the common law rule as to a year and a day and adopted a penal code and penal law and repealed such statutes, it indicated that the legislature expressed its intent to abrogate the common law.

With exception of the Legeri and Brengard cases, the cases of all other jurisdictions passing upon the matter follow the opposite rule as laid down in State v. Daily, 191 Ind. 678, 134 N.E. 481, 20 A. L.R. 1004:

"Where there is no statute contravening the common-law rule that a party must die in a year and a day after the wound is inflicted to make the killing murder or manslaughter, the Legislature by its silence on the subject of time intended that the common-law rule should govern."

Numerous citations to support this rule are to be found in 40 C.J.S. Homicide § 12, p. 856, which have been heretofore set forth.

A study of these numerous decisions forces the conclusion that the majority rules as to the common law rule applies generally throughout the United States where the matter has been considered, and now compels a decision as to whether or not the common law as to the year and a day rule, is applicable in Oklahoma, and in what instances does the common law prevail here.

The earliest expression on this question is to be found in the case of McKennon v. Winn, 1 Okl. 327, 33 P. 582, 585, 22 L. R.A. 501. This case, passed on by the Oklahoma Supreme Court involved an oral contract regarding a real estate transaction before statehood and the question as to what law prevailed in the Oklahoma territory in 1893. The court said:

"But if it be held that the establishment of a U. S. Court in the Indian Territory did not put the common law in force in said territory, except in so

far as was necessary to execute the powers of said court, and for the adjudication of such cases as actually went into that forum, then there was no law in Oklahoma, at the date of its settlement, regulating the making of contracts. If this should be conceded, then it necessarily follows, on principle, that when people from all parts of the United States on the 22nd day of April 1889, settled the country known as Oklahoma, built cities, towns, and villages, and began to carry on trade and commerce in all its various branches, they brought into Oklahoma, with them, the established principles and rules of the common law, as recognized and promulgated by the American courts, and as it existed when imported into this country by our early settlers, and unmodified by American or English statutes. So that, in any event, the common law prevailed in Oklahoma at the time the contract between the appellant and appellee was entered into * * *."

Also, see Cavett v. Territory, 1 Okl.Cr. 493, 98 P. 890, 102 P. 646; Hoppe Hardware Co. v. Bain, 21 Okl. 177, 95 P. 765, 17 L.R.A.,N.S., 310.

The Constitution of Oklahoma is silent upon any adoption or abrogation of the common law. However, the legislature announced by statute the force and effect of the common law in Oklahoma. Title 12 O.S.A. § 2 states:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

Though this statute is the second paragraph under the heading of "Civil Procedure" it has been held applicable to criminal as well as civil law. Ex parte McNaught, 1 Okl.Cr. 260, 100 P. 27; State v. Smith, Okl.Cr., 320 P.2d 719; Spivey v. State, 69 Okl.Cr. 397, 104 P.2d 263.

Under our statutes on criminal procedure, Title 22 O.S.1951 § 9, the legislature further explains the force of the common law as follows:

"The procedure, practice and pleading in the courts of record of this state in criminal action or in matters of criminal nature, not so specifically provided for in this code, shall be in accordance with the procedure, practice and pleadings of the common law."

█ The trial judge in his statement overruling the plea in abatement, demurrer and motion to quash, and the state in their brief, agree by references that by virtue of this statute the common law prevails in this state in all matters of procedure, practice and pleading not specifically provided for in our code but contend that the year and a day rule is one of substantive law and not of practice and procedure or pleading. This contention appears reasonable upon its face but is by no means supported by the authorities. In the case of Commonwealth v. Evaul, 5 Pa.Dist. & Co. 105, is cited in the state's brief in support of the contention that the year and a day rule does not prevail, states page 106:

"At this time there seems to have been some confusion as to the nature of the rule whether it was one of evidence to determine the cause of death, or of pleading, as a limitation upon the time of indictment * * * It was finally settled, however, that the time runs from the stroke, and the reason for the rule is stated by Coke to be 'if he dies after that time it cannot be discerned, as the law presumes, whether he died of the stroke or poison, etc., or a natural death; and in case of life, the rule of law ought to be certain:

'* * * Thus the rule is seen to be in substance one of evidence * * *."

The case definitely establishes the rule as one of evidence.

In a later decision by the California court 1951, People v. Clark, 106 C.A.2d 271, 235 P.2d 56, 59, the court said:

"The requirement that it must appear that the victim died within a year and a day is merely a rule of evidence. In other words, unless the party dies within that time the prosecution will not be permitted to show that he died of the injury allegedly received."

Also see People v. Murphy, 39 Cal. 52, 55; State v. Huff, 11 Nev. 17.

In the case of Head v. State, 68 Ga.App. 759, 24 S.E.2d 145, 147, in discussing this matter, the court said:

"However, the question before us is not one of offense, but one of procedure and evidence."

From the majority of cases dealing with the year and a day rule they hold that the proper procedure is to plead that death ensued within a year and a day from the infliction of the wound and that it must be proven.

Therefore, it has been treated as matter of procedure, pleading as well as evidence, which would bring the rule within the category of Title 22 O.S.1951 § 9.

The County Attorney contends that the legislature by the adoption of Title 22 O.S.1951 § 9 in substance abrogated the common law rule as to a year and a day. It reads as follows:

"There is no limitation of the time within which a prosecution for murder must be commenced. It may be commenced at any time after the death of the person *killed.*" (Emphasis ours.)

This statute pertains to the limitation in which prosecution for murder may be commenced after the crime has been completed and does not affect the year and a day rule, because the crime has not been completed until the death occurs within a year and a day after the wound. The person is presumed to have died from natural causes and not *killed* unless death ensues within a year and a day. The crime of murder at common law is a composite one. The

stroke does not make the crime. Proof of death does not make the crime. It is the composition of the two. Death must follow within a year and a day from the stroke or injury. If death does occur within a year and a day from the stroke then and in that event the elements of murder or manslaughter are complete and a prosecution can be commenced at any time thereafter as provided for by statute. If there is a time lapse of more than a year and a day the elements of murder or manslaughter are not complete and of course the statute of limitations in which a prosecution may be commenced is not applicable.

It is well to note that most states have adopted statutes providing no limitation on the commencement of prosecution in murder cases. Yet, those that have considered the matter have completely ignored similar or exact statutes of limitations in applying the year and a day rule in spite of the statute. For instance, the penal code of California provides in Title 8 § 194, vol. 47:

"To make the killing either murder or manslaughter, it is requisite that a party die within a year and a day after the stroke received or the cause of death administered. In the computation of which the whole of the day on which the act was done shall be reckoned the first."

They also have a statute, Title 3, § 799, vol. 49 which reads as follows:

" * * * prosecution for murder may be commenced at any time after the death of the person killed * *."

Likewise, Indiana by court decision declared the year and a day valid and applicable in that state yet they have a statute as to limitations on murder prosecutions as follows, Burns Indiana Statutes, vol. 4, part 1, § 9–301, page 15:

"Prosecutions for treason, murder, arson and kidnapping may be commenced at any time after the commission of the offense."

Many other citations may be cited to illustrate the distinction by a review of the statutes of jurisdictions declaring valid the

year and a day rule. One is a statute pertaining to limitations; the other denotes the elements necessary to be proved in establishing commission of the offense.

The court is impressed by the argument of the county attorney that the rule should not be applied because of the scientific progress made in the field of medical science and by virtue of great advance in medicine and surgery the need for the rule has been removed. This same argument was advanced in the People v. Legeri case, supra, and also in the case of Commonwealth v. Evaul, supra, in which case the court said:

> "This being the rule we might well ask why it should in any case be applied in modern times when the necessity and reason for it have disappeared with the marvelous advance of medical knowledge and skill. *However, this is a matter properly for legislation as to cases of felonious homicide."*

■ In view of what has been stated hereinbefore and sustained by the decision of an overwhelming majority of the courts of other states, as well as the United States Supreme Court, we are constrained to hold that the information upon its face did not set forth a criminal homicide under the rule herein declared. But even though we rule as herein recited, the limitation on time of death following the wound in order to constitute criminal homicide could very easily be adjusted by the legislature to conform to medical and scientific advancements (as suggested in People v. Brengard, supra) and Head v. State, supra, which reflect themselves in mortality statistics.

■ This brings us to the paramount question before the court as to the relief prayed for in defendant's request for a writ of prohibition to prohibit further prosecution upon the information filed in said cause. Through vast research on this matter and a review of many cases heretofore cited the court has failed to find one single case where the question as to the year and a day rule has been raised by application for a writ of prohibition. Without an exception known to the court the matter has been brought to the appellate court by direct appeal from the judgment of the court in overruling or sustaining (in case of appeal by state) a demurrer or motion to quash. This by inference lends statute to the general rule that the extraordinary writ of prohibition will not be awarded when the ordinary and usual remedies provided by law such as appeal, are available. The petitioner in the instant case made application to this court for a writ of prohibition after the trial judge had overruled a plea in abatement, a demurrer and motion to quash based upon the contention that the information "wholly fails to state the commission of a public offense under or within the meaning of the laws of Oklahoma; therefore, the trial court is without jurisdiction."

The court agrees that the information under the rule stated herein does not state a criminal homicide, but does the information allege any other offense? We feel safe in saying that it does. The demurrer of the defendant, while containing the allegation as to the time of death, admits all other allegations in the information.

The only difference in the crime of manslaughter as alleged in the information and the lesser offense of assault and battery with a dangerous weapon is that in the first, death must have ensued within a year and a day from the injury received as a result of the assault and battery while in the latter, death is not an element and its cause could not be proven.

■■ The information contains all the elements of manslaughter in the first degree except death did not occur within a year and a day. It therefore necessarily follows that the information is sufficient to charge the defendant with the lesser grade of crimes which are embraced within said information including assault and battery with a dangerous weapon. See Baynes v. State, 135 Ga. 219, 69 S.E. 170; Smith v. State, 127 Ga. 262, 56 S.E. 360; Head v. State, 68 Ga.App. 759, 24 S.E.2d 145. This court has held numerous times that an

automobile in the hands of a reckless driver may constitute a dangerous weapon.

We fail to see grounds for the issuance of a writ of prohibition for we cannot say that the court is wholly without jurisdiction to try the defendant upon the included offense.

■ This court has made itself clear as to this matter in the case of State ex rel. Wester v. Caldwell, 84 Okl.Cr. 334, 181 P.2d 843, 844. This court said:

" 'Writ of prohibition' may not issue to prevent inferior courts from erroneously exercising jurisdiction, but only to proceedings as to which inferior tribunal is wholly without jurisdiction or threatens to act in excess of jurisdiction. The prerogative writ of prohibition should be issued with forebearance and caution, and only in cases of necessity, and not in a doubtful case."

Also, see Hughes v. James, 86 Okl.Cr. 231, 190 P.2d 824, 828; State ex rel. Attorney General v. Higgins, 76 Okl.Cr. 321, 137 P.2d 273.

It is therefore apparent that under the allegations of the information the court has jurisdiction to try defendant upon the lesser and included offense under the information even though evidence of the cause of death would be forbidden under the year and a day rule. The writ is therefore denied.

POWELL, P. J., and BRETT, J., concur.

BRETT, Judge.

I concur in the foregoing opinion because under the present law there is no other alternative. The writ of prohibition cannot be granted for the reasons so ably set forth in my associate's opinion. On the question of the year and a day rule, our hands are tied. Our statutory definitions of murder and manslaughter are entirely adequate if death instantaneously follows the blow, or occurs within a short time thereafter. Turner v. State, 8 Okl.Cr. 11, 126 P. 452. But, if one be the victim of an assault and lingers and dies, as in this case fourteen months after the infliction of the blow or injury, a time element intervenes which creates a grave uncertainty in the law as to when the homicide occurs. In resolving this uncertainty as to when under such conditions the crime of murder is complete, as has been demonstrated in the Court's opinion, there is no other recourse than to the common law. In doing this we follow the principle announced by Judge Richardson in Stewart v. State, 4 Okl.Cr. 564, 569, 109 P. 243, 246, 32 L.R.A.,N.S., 505:

"It is true that there are no common-law crimes in this state, but nevertheless, when the Legislature creates without defining an offense which was a crime under the common law, the common-law definition of the crime will be adopted. This is reasonable, and is sustained by plenty of authority. For instance, there are no common-law crimes against the United States, and the United States courts can take cognizance only of offenses made punishable by some express provision of the Constitution, laws, or treaties of the United States. United States v. Eaton, 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591; Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419. But it is uniformly held in the United States courts that, when Congress creates a common-law offense without defining it, the courts will look to the common law for the definition of the crime. In re Greene (C.C.) 52 F. 104; United States v. Cardish, D. C., 143 F. 640. In Pettibone v. United States, supra, Chief Justice Fuller said:

" 'The courts of the United States have no jurisdiction over offenses not made punishable by the Constitution, laws or treaties of the United States, but they resort to the common law for the definition of terms by which offenses are designated.'

"No statute of the United States defines murder. Section 5339 of the

Revised Statutes of the United States (U.S.Comp.St.1901, p. 3627) merely provides that 'every person who commits murder' in any place under the exclusive jurisdiction of the United States 'shall suffer death,' and by Act Jan. 15, 1897, c. 29, 29 Stat. 487 (U.S. Comp.St.1901, p. 3620) it is provided that the jury may qualify their verdict so as to provide for life imprisonment, instead of the assessment of the death penalty. And the United States courts have uniformly said that, inasmuch as the statutes do not define the crime of murder, resort must be had to the common law for its definition."

Many opinions from other courts are cited in support of the Court's views. This opinion was concurred in by Judges Furman and Doyle. It cannot be successfully denied that our statutes are inadequate to define what constitutes murder or manslaughter under the conditions herewith presented for the element as to when death must ensue is completely ignored. But, the common law does establish the time that death must ensue as within a year and a day. Hence, we have but two alternatives; one is resort to the common law, as my learned associate has done, or resort to judicial legislation, which is not only in bad judicial taste, but is an invasion of legislative power and unconstitutional. Hence, the adoption, rejection, or modification of the rule under consideration is fundamentally a matter of legislative policy.

In reaching its conclusion, the legislature may consider the following things urged against the adoption of the seven hundred year old rule. It may consider that when the rule was promulgated the average life expectancy was not more than thirty four years, and that through the marvelous advancements in modern medical science that span has now been increased to approximately sixty nine years in this country. Furthermore, when this rule was advanced, medical science was in its early infancy and determination of cause of death was highly speculative. There was no other avenue than the rule of thumb, by establishment of the presumption that if a man does not die from a blow or injury within a year and a day, he is presumed to have died from some other cause. In this country in this atomic age, cause of death is no longer a matter of pure speculation, but is a matter of scientific determination and medical proof. It may consider that medical science can now prolong at least the semblance of life for years, but seven hundred years ago, nature just ran its course. Under modern conditions, it may consider if this rule is to be adopted in many cases of premeditated murder and manslaughter the result would be exoneration of the killer by presumption instead of by proof. Here, it appears there may never have been any sign of recovery from the blow sustained and death was the undoubted result thereof. It may be that when measured in the light of modern methods of determining cause of death in such cases, the legislature may conclude the rule has attained the limit of its logic.

If such is its conclusion, it may pursue any of the following courses. First, it may adopt the rule as a conclusive presumption. Second, it may positively repudiate the rule as archaic and outmoded. Third, it may refuse to consider the matter, let the Court's opinion stand, and by its silence give sanction to the rule. Fourth, it may modify the rule and extend the span of time for invoking the presumption, but if so, it must determine the point of extension, which entails speculation. Fifth, it may do what this writer believes would be in keeping with both sound reason and justice, recognize the rule as a rebuttable presumption and thus remove adjudication of such grave matters from the field of presumptive law and place it on the basis of fact to be determined by the jury upon proper proof.

In arriving at our conclusions in my associate's opinion and in this one, we have sought to respect the wisdom of the past. Yet, we cannot be unmindful of what was said by Judge Furman in Turner v. State, supra, the world should be ruled by the living and not by the dead, that the law

should keep even step with the march of civilization. I am of the personal opinion that the Legislature and the Court's failure to keep up with the march of civilization gives credence to the statement:

"The law is a blind fool, dealing in technicalities."

Ex parte Lewis, 85 Okl.Cr. 322, 188 P.2d 367, 368. Therein we further said:

"There is no sacredness in precedents that produce confusion and work injustice either to the individual or to the state, even though they are based upon the best of intentions."

Whether the precedents by which we are bound in this instance are good or bad, they are nevertheless now the law. Whether they are to be continued is a matter of policy and that is a question for the Legislature and not the courts.

Hence, we call this matter to the attention of the Legislature. It alone has the power to approve either by positive action or legislative silence this seven hundred year old presumption. It alone must determine the question of whether one charged with murder or manslaughter may be exonerated by a legalistic windfall fashioned from legal necessity of judicial interpretation based upon the law as it now exists.